UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

UNITED STATES OF AMERICA

v.                                           Case Nos.:   3:14cr53/MCR/CJK
                                                          3:16cv67/MCR/CJK
ARIYANNA S. LAMPLEY
    a/k/a Schuyler J. Nickerson
_____/

## REPORT AND RECOMMENDATION

This matter is before the court upon Defendant's "Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody." (ECF No. 58). The Government has filed a response (ECF No. 61) and Defendant has filed a reply. (ECF No. 64). The case was referred to the undersigned for the issuance of all preliminary orders and any recommendations to the district court regarding dispositive matters. *See* N.D. Fla. Loc. R. 72.2; *see also* 28 U.S.C. § 636(b) and Fed. R. Civ. P. 72(b). After a review of the record and the arguments presented, the undersigned concludes Defendant has not raised any issue requiring an evidentiary hearing and the § 2255 motion should be denied. *See* Rules 8(a) and (b), Rules Governing Section 2255 Cases.

## PROCEDURAL BACKGROUND

On June 17, 2014, Defendant Arianna S. Lampley[1] was charged in a two-count indictment with theft of government money (Count One) and aggravated identity theft (Count Two). (ECF No. 1). Appointed counsel Sharon K. Wilson represented Defendant in the proceedings. On July 28, 2014, Defendant entered a plea of guilty as charged pursuant to a written plea agreement, statement of facts, and supplement. (ECF Nos. 18-20).

According to the Presentence Investigation Report ("PSR"), the offense conduct stemmed from Defendant's deposit of the proceeds from a single fraudulent federal income tax return filed in the name of a deceased person and totaling $9, 982.00, into her personal bank account. (ECF No. 28, PSR ¶ 10). Defendant admitted during a subsequent interview with the IRS that she had deposited numerous tax refund checks into her various bank accounts and would keep 30% of the proceeds as a fee. (ECF No. 28, PSR ¶ 15). The IRS learned that she had

---

[1] Lampley is currently incarcerated at FCI Jesup, which houses only male prisoners, and BOP records identify Defendant as male. At the time of the criminal proceedings in this case and at least through the filing of the § 2255 motion and reply, Lampley identified as female. She legally changed her name in June of 2013 to reflect this. (ECF No. 28, PSR ¶ 88). Despite the BOP designation, the court will use female pronouns in referring to her in this recommendation, just as the district court consistently did during rearraignment and sentencing. (ECF No. 48, 46).

Case Nos.: 3:14cr53/MCR/CJK; 3:16cv67/MCR/CJK

deposited 78 other fraudulent federal income tax refunds totaling $202,810.96 into various bank accounts, for a total loss amount of $212,792.96.

Defendant's total offense level was 17. (ECF No. 28, PSR ¶ 35). She had a base offense level of 6, but received a 12-level upward adjustment due to the quantity of loss and a two-level increase due to the vulnerable victims. (PSR ¶¶ 26-28). She also received a three-level adjustment for acceptance of responsibility. (PSR ¶¶ 33, 34). Defendant had 32 criminal history points and her criminal history category was VI. (PSR ¶¶ 44-70). The applicable guidelines range was 51 to 63 months on Count One. Count Two carried a mandatory consecutive term of two years. (PSR ¶¶ 110, 111).

Defense counsel made, and then withdrew at sentencing, an objection to the loss amount, citing a lack of supporting caselaw. (ECF No. 46 at 5). The court nonetheless asked the Government to address the issue of whether the conduct used to enhance the loss amount was "related to" the offense of conviction, and ultimately determined that it was. (ECF No. 46 at 10-22).

The defense also objected to the vulnerable victim enhancement, arguing that a victim who was deceased before the offense conduct commenced could not be

injured. (ECF No. 46 at 5-7). The court overruled the objection. (ECF No. 46 at 22-23).

The court also overruled the defense objection to the two-point enhancement for Defendant's probationary status at the time of the offense conduct. (ECF No. 46 at 7, 23-24).

In imposing sentence, the district court specifically noted that its sentence would have been the same even if it had not considered the prior uncharged conduct as relevant conduct, in large part due to what it described as Ms. Lampley's "atrocious" criminal history. (ECF No. 46 at 26-27, 31). It imposed a sentence at the low end of the guidelines range in conjunction with the consecutive two-year term, resulting in a total sentence of 75 months in custody. (ECF No. 46 at 29). The court also ordered that Defendant pay $212,792.96 in restitution, and serve a three-year term of supervised release.

Defendant appealed, challenging the application of the vulnerable victim enhancement to cases involving victims who were deceased at the time the offenses began. (ECF No. 56). The Eleventh Circuit affirmed her sentence, finding that the two-level enhancement did not affect the total sentence imposed and that the sentence imposed was reasonable. It first noted the district court's statement on the

record that it would have imposed the same sentence based on the § 3553(a) factors. The court then observed that even without the two-level vulnerable victim enhancement Lampley's 51-month sentence would have been within the 41 to 51 month guideline range and finally that the sentence was well below the statutory maximum of ten years. (ECF No. 54 at 5).

In the present motion, Defendant raises two grounds for relief. First, she contends she is entitled to sentencing relief due to a guidelines amendment, and second that she was denied the effective assistance of counsel.

## ANALYSIS

<u>General Standard of Review</u>

"Section 2255 does not provide a remedy for every alleged error in conviction and sentencing." *Spencer v. United States*, 773 F. 3d 1132, 1138 (11th Cir. 2014). Collateral review is not a substitute for direct appeal, and therefore the grounds for collateral attack on final judgments pursuant to § 2255 are extremely limited. A prisoner is entitled to relief under § 2255 if the court imposed a sentence that (1) violated the Constitution or laws of the United States, (2) exceeded its jurisdiction, (3) exceeded the maximum authorized by law, or (4) is otherwise subject to collateral attack. *See* 28 U.S.C. § 2255(a); *McKay v. United States*, 657 F.3d 1190, 1194 n.8

(11th Cir. 2011).   "Relief under 28 U.S.C. § 2255 'is reserved for transgressions of constitutional rights and for that narrow compass of other injury that could not have been raised in direct appeal and would, if condoned, result in a complete miscarriage of justice.'"   *Lynn v. United States*, 365 F.3d 1225, 1232 (11th Cir. 2004) (citations omitted).   The "fundamental miscarriage of justice" exception recognized in *Murray v. Carrier*, 477 U.S. 478, 496 (1986), provides that it must be shown that the alleged constitutional violation "has probably resulted in the conviction of one who is actually innocent . . . ."

The law is well established that a district court need not reconsider issues raised in a § 2255 motion which have been resolved on direct appeal.   *Stoufflet v. United States*, 757 F.3d 1236, 1239 (11th Cir. 2014).   Furthermore, because a motion to vacate under § 2255 is not a substitute for direct appeal, issues which could have been raised on direct appeal are generally not actionable in a § 2255 motion and will be considered procedurally barred.   *Lynn*, 365 F.3d at 1234–35; *Bousley v. United States*, 523 U.S. 614, 621 (1998).

Ineffective assistance of counsel claims generally are not cognizable on direct appeal and are properly raised by a § 2255 motion regardless of whether they could have been brought on direct appeal.   *Massaro v. United States*, 538 U.S. 500,

503 (2003). To prevail on a constitutional claim of ineffective assistance of counsel, a defendant must demonstrate both that counsel's performance was below an objective and reasonable professional norm and that she was prejudiced by this inadequacy. *Strickland v. Washington*, 466 U.S. 668, 686 (1984). In applying *Strickland*, the court may dispose of an ineffective assistance claim if a defendant fails to carry her burden on either of the two prongs. *Strickland*, 466 U.S. at 697. To establish ineffective assistance, Defendant must provide factual support for her contentions regarding counsel's performance. *Smith v. White*, 815 F.2d 1401, 1406–07 (11th Cir. 1987). Bare, conclusory allegations of ineffective assistance are insufficient to satisfy the *Strickland* test. *See Boyd v. Comm'r, Ala. Dep't of Corr.*, 697 F.3d 1320, 1333–34 (11th Cir. 2012).

An evidentiary hearing is unnecessary when "the motion and files and records conclusively show that the prisoner is entitled to no relief." *See* 28 U.S.C. § 2255(b); *Rosin*, 786 F.3d at 877; *Gordon v. United States*, 518 F.3d 1291, 1301 (11th Cir. 2008). Not every claim of ineffective assistance of counsel warrants an evidentiary hearing. *Gordon*, 518 F.3d at 1301 (*citing Vick v. United States*, 730 F.2d 707, 708 (11th Cir. 1984)). To be entitled to a hearing, a defendant must allege facts that, if true, would prove he is entitled to relief. *See Hernandez v.*

*United States*, 778 F.3d 1230, 1234 (11th Cir. 2015). A hearing is not required on frivolous claims, conclusory allegations unsupported by specifics, or contentions that are wholly unsupported by the record. *See Winthrop*‒*Redin v. United States*, 767 F.3d 1210, 1216 (11th Cir. 2014) (explaining that "a district court need not hold a hearing if the allegations [in a § 2255 motion] are . . . based upon unsupported generalizations") (internal quotation marks omitted); *Peoples v. Campbell*, 377 F.3d 1208, 1237 (11th Cir. 2004). Even affidavits that amount to nothing more than conclusory allegations do not warrant a hearing. *Lynn*, 365 F.3d at 1239. Finally, disputes involving purely legal issues can be resolved by the court without a hearing. An evidentiary hearing is unnecessary in this case.

### Ground One

Defendant's first ground for relief relates to the application of the vulnerable victim enhancement, in conjunction with subsequent guidelines amendments. She argues that if her sentence were calculated pursuant to the 2015 amendments to the loss calculation table and without the "erroneous" two level enhancement, her adjusted guideline range would be 31 to 41 months. Therefore, she argues, she is entitled to resentencing to a sentence within the revised guideline range, or

alternatively a new direct appeal. (ECF No. 58 at 7). Defendant's argument is without merit.

In 2015, the Sentencing Commission, recognizing the effects of inflation, amended the guidelines to adjust the monetary tables in several guidelines, including U.S. Sentencing Guidelines Manual § 2B1.1. Had Defendant been sentenced after the effective date of the 2015 amendments, offense conduct involving a $212,792.96 loss would have merited a ten-level rather than twelve-level adjustment. But the amendment in question, Amendment 791, is not listed in U.S. Sentencing Guidelines Manual § 1B1.10, and thus does not authorize a reduction in a defendant's term of imprisonment. *See United States v. Armstrong*, 347 F.3d 905 (11th Cir. 2003) (holding that in order for a sentence to be reduced retroactively under § 3582(c)(2), there must have been an amendment to the Sentencing Guidelines that has lowered the guideline range applicable to the sentence and is listed under § 1B1.10(c)).

Additionally, based on the court's comments at sentencing, accepted by the court of appeals, this amendment would have had no impact on its sentence. As noted above, the court stated unequivocally at sentencing that its sentence would have been the same even if it had not considered the prior uncharged conduct, which

gave rise to the twelve-level guidelines adjustment, as relevant conduct. (ECF No. 46).

To the extent Defendant's claim encompasses a renewed challenge to the application of the vulnerable victim enhancement, the appellate court already found the enhancement did not affect the total sentence. Any ruling on this question would be merely advisory. No relief is warranted on Ground One of Defendant's motion.

Ground Two

Defendant next argues her attorney was constitutionally ineffective because counsel was neither present during conversations between Defendant and investigators nor counseled Defendant on protecting her interests during these discussions. Defendant complains that the "cooperation" she provided formed the basis for the twelve-level relevant conduct enhancement in this case, and an indictment in another criminal case, Case 3:15cr7/RV.[2]

---

[2] In Case 3:15cr7/RV, Defendant and three others were charged with conspiring to file false and fraudulent claims seeking payments from the Gulf Coast Claims Facility as a result of the Deepwater Horizon oil spill. Defendant pleaded guilty and was sentenced to a term of 48 months imprisonment, with 21 months to run consecutive and 27 months to run concurrent to her sentence in the instant case.

In her reply, Defendant concedes the Government's and Ms. Wilson's representations refute her claim, because counsel had not yet been appointed to represent Defendant at the time of the discussions of which she complains. (ECF No. 64 at 4). Defendant then attempts to morph her claim into one asserting she was denied counsel at a critical stage of the proceedings. She asserts that because of the uncounseled meeting, she "provided evidence that resulted in her secured conviction." (ECF No. 64 at 4). The claim is unclear, but if she means to allege that her meeting with investigators led to her indictment and conviction in Case 3:15cr7, it is not properly before this court, and could only be cognizable in a challenge to her conviction in that case. Defendant has not shown she is entitled to relief on Ground Two.

<u>Defendant's Affidavit</u>

Defendant's affidavit in support of the § 2255 motion contains additional allegations and information about her case, as well as several apparent misstatements. Although the matters mentioned therein were not raised as separate claims for relief, for the sake of completeness, the court will address them herein.

Defendant claims in the affidavit that she received a "promise" that she "would be given 5K1 for [her] full cooperation." (ECF No. 58 at 21). This

assertion is flatly contradicted by Defendant's own statements in the record. First, the cooperation agreement signed by Defendant contains no such promise. (ECF No. 20 at 3). Also, Defendant stated under oath at rearraignment that she understood that it was up to the Government whether to file the 5K1 motion, that it had agreed only to "listen to" her and that it had not agreed to file a 5K1 motion at that point. (ECF No. 48 at 20).

Defendant also claims she was never made aware that the sentences on the two charges could not run concurrent as a matter of law. (ECF No. 58 at 21). Again, the record reflects that Defendant was clearly so advised, more than once. The plea agreement expressly stated that the term of imprisonment on Count Two was a mandatory term of two years' imprisonment *consecutive to any other term of imprisonment imposed on Defendant under any other provision of law*." (ECF No. 18 at 1-2 (emphasis added)). Furthermore, the court advised her at rearraignment that there was "a mandatory term of imprisonment that must be served consecutive to any term imposed on Count One, and that mandatory term is a term of 24 months or two years." (ECF No. 48 at 11). The same portions of the record contradict Defendant's assertion that counsel told her before sentencing that counsel "pretty much could guarantee that [Defendant] would not be going to prison." (ECF No.

Case Nos.: 3:14cr53/MCR/CJK; 3:16cv67/MCR/CJK

58 at 21). With a mandatory term on Count Two, an assertion that Defendant could avoid prison would have been nonsensical.

Similarly, Defendant claims that had she known that the charges could not be run together at sentencing, she "would have invested the time and energy in pursuing a plea agreement." The plea and cooperation agreement Defendant signed in this case was almost certainly the best "deal" she could have expected from the Government. It is well-known in this district that the Office of the United States Attorney does not "plea bargain." Defendant, like most other defendants who plead guilty in this district, had the opportunity to cooperate with the Government in hopes of receiving a substantial assistance motion. Although she did not receive the benefit of such a motion, no better plea agreement was available to her.

Defendant complains in her affidavit that counsel showed nothing but "contempt and hostility" towards her from the beginning. (ECF No. 58 at 21). She believes counsel "viewed [her] trans-gender lifestyle to be more problematic" than the criminal charges, and she asserts that communication with counsel was very difficult. (ECF No. 58 at 20). Despite this, when the court asked Defendant at rearraignment if she was satisfied with counsel's representation of her, she responded in the affirmative. (ECF No. 48 at 24). At no point did Defendant

advise the court of the "contempt and hostility" of which she now complains or any other problem with her attorney.   Additionally, counsel's affidavit in response to Defendant's motion reflects that Defendant's belief about counsel's attitude was mistaken.   Counsel states she did not know for certain Defendant was a transgender individual until counsel attended Defendant's interview with the probation officer after Defendant entered her guilty plea, and that Defendant's transgender status had no impact on counsel's representation of her.   (ECF No. 61-1 at 2).

Finally, with respect to her direct appeal, Defendant contends she began working on her direct appeal immediately after sentencing.   (ECF No. 58 at 21). She complains that counsel "never gained [her] input" and that the appeal was later denied.   To the extent Defendant suggests she had meritorious issues that counsel could or should have raised and would have changed the outcome of the proceedings, she has not advised this court as to what these issues would be.   This vague and conclusory claim fails.

Conclusion

For the foregoing reasons, the court finds Defendant has failed to show that any of the claims raised in her motion to vacate, set aside, or correct sentence

pursuant to 28 U.S.C. § 2255 have merit.   Nor has she shown that an evidentiary hearing is warranted.   Defendant's motion should be denied in its entirety.

## Certificate of Appealability

Rule 11(a) of the Rules Governing Section 2255 Proceedings provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant," and if a certificate is issued "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)."   A timely notice of appeal must still be filed, even if the court issues a certificate of appealability.   Rule 11(b), Rules Governing Section 2255 Cases.

After review of the record, the court finds no substantial showing of the denial of a constitutional right.   28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000) (explaining how to satisfy this showing) (citation omitted). Therefore, it is also recommended that the court deny a certificate of appealability in its final order.

The second sentence of Rule 11(a) provides: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue."   If there is an objection to this recommendation by either party, that party

Case Nos.: 3:14cr53/MCR/CJK; 3:16cv67/MCR/CJK

may bring this argument to the attention of the district judge in the objections permitted to this report and recommendation.

Based on the foregoing, it is respectfully RECOMMENDED:

1. The motion to vacate, set aside, or correct sentence (ECF No. 58) be DENIED.

2. A certificate of appealability be DENIED.

At Pensacola, Florida, this 9th day of May, 2018.

*/s/ Charles J. Kahn, Jr.*
**CHARLES J. KAHN, JR.**
**UNITED STATES MAGISTRATE JUDGE**

### NOTICE TO THE PARTIES

**Objections to these proposed findings and recommendations must be filed within fourteen (14) days after being served a copy thereof.  <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.</u>  A copy of objections shall be served upon all other parties.  If a party fails to object to the magistrate judge's findings or recommendations as to any particular claim or issue contained in a report and recommendation, that party waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions.  *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636**.

Case Nos.: 3:14cr53/MCR/CJK; 3:16cv67/MCR/CJK